## PROCEEDINGS FOR RELOCATING A COUNTY ROAD.

### Circuit Court of Lorain County.

HENRY M. HAGELBARGER, AS PROSECUTING ATTORNEY, v.
THE PENNSYLVANIA COMPANY.

Decided, June 18, 1909.

*County Road—Change in Location—Informal Proceedings—Presumption.*

1. Under Section 4661, Revised Statutes, the county commissioners have authority to vacaté all or a part of a county road upon the application of "any twelve freeholders residing in that part of the county where such road is established," and where they act upon an application purporting to be so signed, in a collateral proceeding calling in question the regularity of their proceedings, there is no presumption that the twelve signers were not freeholders residing in the vicinity, though the record is silent on the subject.

2. In such case, where part of a road is vacated and a new road actually established and used by the public and the proper authorities, there is a legal change in the location of the road, even though the proceedings of the commissioners may have been informal.

*Grant, Sieber & Mather,* for plaintiff in error.
*Allen, Waters, Young & Andress,* contra.

MARVIN, J.; WINCH, J., and HENRY, J., concur.

Under favor of Section 863, Revised Statutes, the plaintiff in his official capacity brought this action in the court of common pleas. The purpose of the action was to obtain an order requiring the defendant, which is a railroad company, to remove fences and obstructions from what the plaintiff claims is a public highway in this county.

The facts are these:

Prior to the year 1888, a public road lead westerly from the north and south Center road, in the township of Hudson, in this county. That road thus running westerly crossed the right-of-way and tracks of the Cleveland & Pittsburg Railroad, a road

now operated by the defendant. This crossing was diagonal, not at right angles, and the highway at a point about 200 feet westerly from the crossing just mentioned, made an obtuse angle, and lead to the northwest again crossing the track of this railroad at a point about 200 feet westerly from this angle, and then continued on to the west. The point just easterly of the point where the highway made the crossing first mentioned of the railroad tracks, deflected slightly to the south. This point is indicated on a plat shown in the trial as "No. 1."

. The point where the second crossing of the track was made is indicated on this plat as "No. 2," and the angle, already mentioned in this highway, is designated on the plat as "No. 3." It will be seen that the distance from No. 1 to No. 2 was somewhat greater by following this highway than it is by drawing a straight line from No. 1 to No. 2. In 1888 the land along the north side of the railroad from No. 1 to No. 2 was owned by one Hiram Bishop, who owned a farm, and this land along the north line of the railroad was a strip along the south side of this farm. On the south side of the railroad the land was then owned by Avery Bishop, a brother of Hiram. Subsequently Avery came to own all the land, that is to say, the farm on the north side as well as on the south side of the railroad. Avery died in ——— and Della Bishop Ingersoll became by inheritance from Avery Bishop the owner of the land, and this suit was brought in her interest in the name of the prosecuting attorney, as authorized by the section of the statute already mentioned. In 1888, the railroad company and the commissioners of Summit county desiring to eliminate these crossings of the road over the railroad, made an arrangement by which a strip of land along the north line of the railroad, the proper width for a public highway, and leading from point No. 1 to point No. 2, was deeded by Hiram Bishop to the commissioners of the county, the consideration paid therefor of $200 being paid by the railroad company. Thereupon the commissioners resolved, upon the petition of freeholders of the county, to change the line of the highway so that it should run along this land deeded to them by Bishop, and they took possession

of and constructed a road along this strip of land so that the highway as thus changed by the commissioners became a continuous highway from the road as it originally was, leading from the east to and beyond point No. 2, and so on west. The commissioners further resolved not to abandon that part of the old road from point No. 1 to point No. 3, a distance of about 200 feet, as has already been stated. On the southeasterly side of this part not thus abandoned were and are two dwelling-houses. There are no other residences and no places of business along any part of the old road from point No. 1 to point No. 2. It will be seen that by living upon the part of the road, as above described, those occupying these dwelling-houses and those having business with them could reach the road as established by driving this distance of less than 200 feet to the main road. All this having been done, the railroad company placed its fences along the north and south sides of its right-of-way across this part of the old road which made the crossing at point No. 2, and it is for the purpose of having these fences, and such other obstructions as the railroad company have placed along its right-of-way where the road crossed at No. 2, removed, that this suit is brought.

It is urged that the proceedings of the commissioners in attempting to vacate any part of the old road were invalid and that therefore the old road exists as it did prior to 1888, and the defendant is not entitled to obstruct it in any way. It is provided in Section 4661, Revised Statutes of Ohio, that:

"When a county road or part of a county road is considered useless, any twelve freeholders residing in that part of the county where such road is established, may make application agreeably to the provisions of this chapter, to the commissioners of the county to vacate the same and if no objection be made, the commissioners may declare vacated the road or any part thereof which they may deem unnecessary to keep open for public convenience."

In the adjudications which have been made under this statute, the language of the courts has been, freeholders residing in the "vicinity," but this word is so used because clearly the word "vicinity" means the same as the language used in the statute,

that is, they must reside in the part of the county where the road is located. It does not appear in the record of the proceedings of the commissioners that any finding was made by the commissioners that the freeholders who signed the petition resided in the vicinity of this road or in that part of the county in which the road is located, and it is said that no presumption arises in favor of the regularity of the proceedings of the commissioners, but that they can be held to have had only such jurisdiction as affirmatively appears by the record of their proceedings. This claim is based upon the proposition that jurisdiction will not be presumed in favor of inferior judicial tribunals.

By reference to Section 4650, Revised Statutes, it will be seen that the record required to be made up by the commissioners of their acts and proceedings to vacate a public highway, does not include any record of their findings as to the place of residence of the petitioners, so that it is clear that when the commissioners have recorded the petition for the road, together with their orders to the viewers, and the report of the viewers together with the survey and plat, and their order thereon, all the record has been made which the statute contemplates, and this does not include any record of a finding as to the places of residence of the petitioners. We reach the conclusion, therefore, that the position is not well taken that the presumption must be that the petitioners were not residents of the vicinity, and so it was proper at the hearing of this case that evidence of the residence of such petitioners should be taken, and from that evidence, we find the court was justified in holding that the petitioners were residents of that part of the county in which the road was located. But however that may be, there can be no doubt that the new road from point No. 1 to point No. 2 became, by what was done by the commissioners, as has already been pointed out, an established public highway. This is clear from the case of *The City of Steubenville* v. *Ezra A. Knight*, 23 Ohio St., 610, the first clause of the syllabus of which case reads:

"A conveyance of land to the county commissioners for a county road, the acceptance of such grant by the commissioners,

and opening of the road by their order, and its subsequent use as such by the public, and by the proper authorities, constitute it a legal, public highway, notwithstanding the want of statutory proceedings for its establishment.''

By Section 4669 of the Revised Statutes of Ohio, it is provided that, ''All alterations of county roads heretofore made and established, or which shall hereafter be made and established, shall be and remain part of such roads, and so much of the original roads as is rendered unnecessary by such alterations in the opinion of the viewers and the county commissioners, shall be and remain vacated.''

In the case of *Silverthorne* v. *Parsons,* 60 Ohio St., 331, this section was considered, and the syllabus of the case reads:

''When the owners of land crossed by a county road enter into an agreement with the county commissioners pursuant to which they convey to the commissioners other land, with a view to affecting a necessary change in the road, and the road is by order of the commissioners opened on the lands conveyed, and is so used by the public and by the proper authorities, there is a legal change in the location of the highway, notwithstanding the want of statutory proceedings for that purpose; and under Section 4669 of the Revised Statutes, so much of the original road as is rendered unnecessary by the change is vacated.''

We hold that clearly, from the evidence in this case, so much of the original road as extended from point No. 3 to point No. 2 on the plat already mentioned, was rendered wholly unnecessary by the opening of the road from point No. 1 to point No. 2. That being true, the establishment of the new road resulted in a vacation of this last named part of the old road, and the acts of the defendant in this action in placing fences along either side of their right-of-way, and such other obstructions as they placed within the limits of their right-of-way, did not constitute an obstruction to any public highway, and the judgment of the court dismissing the plaintiff's petition was right, and is affirmed.